**QUINN E. KURANZ** OSB No. 114375
quinn@kuranzlaw.com
The Office of Q.E. Kuranz, Attorney at Law, LLC
65 SW Yamhill St., Suite 300
Portland, OR 97204
Telephone: 503-914-3930
Fax: 503-200-1289
**ATTORNEY FOR PLAINTIFF**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SCOTT SAN FILIPPO<br><br>             Plaintiffs,<br><br>  v.<br><br>**VR TRAINING SOLUTIONS, INC., dba: Shift Bias,** a domestic corporation, **WENDY MORGAN,** an individual, and **MARGARET HUBBELL**, an individual<br>             Defendants. | CASE NO.:   3:20-cv-1890<br><br>COMPLAINT FAILURE TO PAY MINIMUM WAGES; OVERTIME; PENALTIES; LIQUIDATED DAMAGES; BREACH OF CONTRACT; BREACH OF FIDUCIARY DUTY;<br>ORS 653.055; ORS 652.150; 29 USC §§ 207, 216<br><br>JURY DEMAND |

Plaintiff alleges:

## I.     JURISDICTION AND VENUE

1. Plaintiff Scott San Filippo lives in the state of Oregon, Multnomah County.

2. Defendant VR Training Solutions, Inc., is a Domestic Business Corporation with its Principal Place of Business in Bend, Oregon, and its Registered Agent in Portland, Oregon.

3. Defendant Wendy Morgan is a resident of the state of Oregon.

4. Defendant Margaret is a resident of the state of Oregon.

5. This court has subject matter jurisdiction because the claims alleged herein arise under the Fair Labor Standards Act (FLSA). 28 USC § 1331.

6. This court has subject matter jurisdiction over Plaintiffs' state law wage claims because plaintiffs' state law wage claims arise from the same set of facts as Plaintiffs' FLSA claims. 28 USC § 1337.

7. Plaintiffs' claims arose primarily in Multnomah County, Oregon, where Plaintiff performed much of his work for Defendants. Venue in the Portland Division is appropriate.

## II.    ALLEGATIONS

8. Defendant VR Training Solutions, Inc., is a technology start-up that operates under the assumed business name, Shift Bias.

9. Wendy Morgan is a President and Treasurer of VR Training Solutions, Inc. Ms. Morgan made employment decisions on behalf of VR Training Solutions, Inc., in regard to Plaintiff, including decisions concerning wages, work assignments, payment of wages, and termination of employment. Defendant Morgan is a joint employer with VR Training Solutions, Inc, and Margaret Hubbell

10. Margaret Hubbell is an owner, shareholder, and principal or executive officer of Defendant VR Training Solutions, Inc. Ms. Hubbell made employment decisions on behalf of VR Training Solutions, Inc., in regard to Plaintiff, including decisions concerning wages, work assignments, payment of wages, and termination of employment. Defendant Hubbell is a joint employer with VR Training Solutions, Inc, and Wendy Morgan.

11. VR Training Solutions, Inc., Wendy Morgan and Margaret Hubbell are herein collectively referred to as "Defendants."

12. Based on reasonable knowledge and belief, to be determined by additional discovery, Defendants Wendy Morgan and Margaret Hubbell serve as VR Solutions, Inc.'s executives and Board of Directors, and owe Fiduciary duties to shareholders.

13. Defendants founded VR Solutions, Inc.'s around September 2018, or more than a year before approaching Plaintiff to hire him.

14. On or about November 18, 2019, Defendants hired Plaintiff to work as the Chief Technology Officer. Plaintiff's Executive Employment Agreement is Attached herein as Exhibit 1.

15. Plaintiff's position and job duties were to be determined by Defendants at their sole discretion.  Exhibit 1.

16. Plaintiff's position was "AT-WILL" meaning that "[e]ither party may terminate the employment relationship at any time for any or no reason and with or without the consent of the other party."  Exhibit 1.

17. The Executive Agreement provided that Defendants shall pay Plaintiff an "initial salary for the first three (3) months of employment" at a rate of "$0" or without compensation. Exhibit 1.

18. Pursuant to the agreement, Plaintiff was not entitled to any compensation for the work he performed through at least February 18, 2020, or perhaps through the completion of February 29, 2020.

19. This term of the agreement, purporting that Plaintiff would neither earn nor receive pay for the first three months is illegal, and facially, and *per se* violates both Oregon and Federal Minimum Wage Laws.  ORS 653.010 to ORS 653.261; 29 USC § 206.

20. Approximately one month after Plaintiff began working for Defendants, on December 17, 2019, Plaintiff and Defendants signed the Employment Agreement. Exhibit 1.

21. The Executive Employment Agreement establishes the Defendants regular pay date. The Agreement states that Defendants would pay Plaintiff "in installments in accordance with Company's payroll practices and policy." Exhibit 1.

22. According to the Executive Employment Agreement, for Plaintiff's fourth, fifth, and sixth month of employment, Defendants were to pay Plaintiff $6,000.00 per month. Exhibit 1.

23. These payments should have begun either February 19, 2020, or at least by March 1, 2020.

24. Defendants did not pay Plaintiff any wages from February 19, 2020, through March 2020, pursuant to the Agreement. This failure to pay Plaintiff pursuant to the Agreement constituted a material breach of the Employment Agreement. Plaintiff is contractually owed $6,000.00 per month for work performed from February 19, 2020, through April 8, 2020.

25. Pursuant to Plaintiff's original employment agreement, Plaintiff would have had an annual salary of $76,000.00, which can be reduced to a regular hourly rate of $36.53 per hour for purposes of calculating damages through April 8, 2020. Exhibit 1.

26. On April 8, 2020, Defendants proposed an amendment to the amount Plaintiff would receive a monthly salary of $10,000 per month, beginning April 15, 2020, which can be reduced to an hourly rate of $57.69 per hour for the purposes of calculating damages from April 15 to April 22, 2020, and for State-Law Penalties. ($10,000 per month x 12 months / 2080 hours). Exhibit 2.

27. On April 22, 2020, Defendants fired Plaintiff.

28. Defendants provided Plaintiff no explanation to Plaintiff for his termination.

29. On April 22, 2020, Defendants granted Plaintiff 27,775 shares, which Plaintiff was entitled to receive under his employment contract.

30. Defendants have an obligation to make, keep, and maintain all records of hours that Plaintiff actually worked.

31. Defendants did not make, keep, or maintain records of the actual hours that Plaintiff worked from November 18, 2019, to April 22, 2020, when Defendants terminated plaintiff.

32. Because Defendants have failed to meet their statutory obligations to make, keep, and maintain a record of the actual hours that Plaintiff worked, and Defendants have *per se* violated the FLSA in failing to properly pay Plaintiff Oregon and Federal Minimum wages, Plaintiff is entitled to the presumption that his reasonable estimate of hours worked is sufficient to sustain the amount of unpaid minimum wages, overtime wages, and regular wages he is owed.

33. Based on reasonable knowledge and belief, to be adjusted after additional discovery, Plaintiff estimates he worked the following hours:

    a.  For the week of November 18, 2019, he worked 32 hours.

    b.  For the week of November 25, 2019, he worked 8 hours.

    c.  For the week of December 2, 2019, he worked 50 hours (10 overtime).

    d.  For the week of December 9, 2019, he worked 60 hours (20 overtime).

    e.  For the week of December 16, 2019, he worked 50 hours (10 overtime).

    f.  For the week of December 23, 2019, he worked 16 hours.

    g.  For the week of December 30, 2019, he worked 40 hours.

h.  For the week of January 6, 2020, he worked 60 hours (20 overtime).

i.  For the week of January 13, 2020, he worked 70 hours (30 overtime).

j.  For the week of January 20, 2020, he worked 60 hours (20 overtime).

k.  For the week of January 27, 2020, he worked 60 hours (20 overtime).

l.  For the week of February 3, 2020, he worked 60 hours (20 overtime).

m.  For the week of February 10, 2020, he worked 60 hours (20 overtime).

n.  For the week of February 17, 2020, he worked 60 hours (20 overtime).

o.  For the week of February 24, 2020, he worked 60 hours (20 overtime).

p.  For the week of March 2, 2020, he worked 60 hours (20 overtime).

q.  For the week of March 9, 2020, he worked 40 hours.

r.  For the week of March 16, 2020, he worked 80 hours (40 overtime).

s.  For the week of March 23, 2020, he worked 80 hours (40 overtime).

t.  For March 30 and 31 he worked 24 hours.

34. Defendants paid Plaintiff no wages for all the hours Plaintiff worked from November 18, 2019, to March 31, 2020.

35. Defendants breached the Employment Contract in failing to pay Plaintiff at a rate of $6,000.00 per month in wages for hours worked from February 18, 2020, through April 8, 2020.

36. Because Defendants paid Plaintiff no wages for these hours worked, Plaintiff does not qualify for any exemption from the payment of overtime or minimum wages.

37. In particular, both Oregon and Federal Law prohibit an employee or an employer from entering into an agreement that would require an employee to work at less than the

minimum wage rate or overtime wages.  Such an agreement is not a defense to a claim of

failure to pay minimum wages or overtime wages.

38. Based on reasonable knowledge and belief, to be determined by additional discovery,
Defendants payroll practices and policy was to pay employees twice per month, on
regularly established paydays, including individual Defendants Margaret Hubbell and
Wendy Morgan.

39. Plaintiff is entitled to recover:

  a.  Unpaid regular wages from November 18, 2019, to March 31, 2020 for 720 hours
      worked at a rate of $36.53 per hour, totaling $26,301.60 in unpaid wages.

  b.  Unpaid overtime wages from November 18, 2019, to March 31, 2020 for 310 hours
      (not included in the regular hours) at an overtime rate of $54.80 (36.53 x 1.5),
      totaling $16,981.80.

  c.  Liquidated damages for Defendants failure to pay overtime wages totaling
      $16,981.80. 29 USC §§ 207 and 216.

  d.  Liquidated damages for Defendants failure to pay the federal minimum wage rate
      for all 1,030 hours worked totaling $7,467.50.  29 USC §§ 206 and 216.

  e.  A state Penalty for Defendants failure to pay Oregon State Minimum Wages in an
      amount not to exceed $13,845.60.  ORS 653.055; ORS 652.150.

  f.  A state Penalty for Defendants failure to pay Oregon Overtime Wages in an amount
      not to exceed $13,845.60.  ORS 653.055; ORS 652.150.

40. On May 20, 2020, Plaintiff sent Defendants an email, stating that Defendants owed
Plaintiff for unpaid wages for time that he worked for the five months of employment for

which Plaintiff was unpaid.  In that email, Plaintiff provided an estimate of back wages he was owed.

41. On May 28, 2020, Defendant Hubbell sent an email to Plaintiff on behalf of Defendants stating that "Upon a careful review of our payroll records we've determined that you may be owed an additional amount, based on 40-hour weeks for the period you were employed by VRT."  Defendant Hubbell copied Defendant Morgan on the email.  Defendant also noted that Plaintiff may have worked overtime, and requested Plaintiff provide information for any alleged overtime hours.

42. In an email response to Defendants on May 29, 2020, Plaintiff stated that he worked between 10 and 40 hours of overtime per week over the course of his employment.

43. Defendants did not pay Plaintiff all wages due within 12 days of that written notice.

44. Defendants did not pay any wages to Plaintiff within 12 days of written notice, or within 30 days from the date that Defendants fired Plaintiff.

45. As a result of Defendants failure to pay Plaintiff all wages due upon termination of employment, Defendants owe Plaintiff a penalty for failure to pay wages due at termination in an amount not to exceed $13,845.60.  ORS 652.140; ORs 652.150.

46. On or about July 21, 2020, Plaintiff, through counsel, mailed to Defendants a Notice of Unpaid Wages, Overtime Wages, Minimum Wages, and Penalties and Attorney Fees, including under ORS 652.200.

47. On August 3, 2020, Defendants mailed Plaintiff a check for $2,760.97 gross wages that were unpaid at the time Defendants terminated Plaintiff.  Defendants stated that they

estimated Plaintiff was owed $2,507.84 for unpaid miniumum wages and $253.13 in unpaid overtime wages.  Exhibit 3.

48. In making the August 3, 2020, payment, Defendants stated that their method of calculating wages owed was to estimate the amount of wages Plaintiff was owed for the entire time he worked, subtract the amount paid for wages Defendants actually paid Plaintiff in April at a rate of $10,000 per month, and paid Plaintiff the remaining difference for time worked from November 18, 2019, to March 31, 2020.  The $2,760.97 is insufficient to meet state or federal minimum wage requirements for the 1,030 regular hours Plaintiff worked from November 18, 2019, to March 31, 2020, and equates to an hourly rate of $2.68 per hour.

49. Based on reasonable knowledge and belief, to be determined by additional discovery, Defendants may be subject to the Fair Labor Standards Act under Enterprise Coverage as Defendants gross more than $500,000 per year and employ at least two subject employees.

50. Plaintiff is otherwise covered under the Fair Labor Standards Act because a part of his duties in which they were routinely required to use instrumentalities of interstate commerce in the performance of his employment for defendants including using the interstate highways and roads, preparing correspondence that was transmitted in interstate commerce, regularly communicating with people in other states, traveling to other states, and creating and preparing goods for the sale, delivery, and transmission in interstate commerce. Plaintiff did in fact travel and use instrumentalities of interstate commerce in performance of his job duties for Defendants.  Plaintiff was engaged in interstate commerce, attempting to raise funds and market Defendants' products.

51. Based on reasonable knowledge or belief to be determined through additional discovery, Plaintiff believes that the Immix Law Group or another lawyer or law firm or attorney drafted, advised, and provided Defendants with the proposed Executive Employment Agreement attached at Exhibit 1.

52. Based on reasonable knowledge and belief to be determined through additional discovery, Plaintiff believes that the drafting and completion of the Executive Employment Agreement constitutes *per se* legal negligence and legal malpractice in that Defendants attorneys' advice fell below the standard of care when Defendants' attorneys advised Defendants on Plaintiff's Executive Employment Agreement, including in the following ways:

   a. Defendants' Executive Employment Agreement plainly violates Oregon Laws requiring employers to pay employees at least Oregon minimum wages.

   b. Defendants' Executive Employment Agreement plainly violate the Fair Labor Standards Act, requiring employers to pay employees at least Federal Minimum Wages.

   c. Defendants' Executive Employment Agreement plainly violates Oregon Laws in advising that Plaintiff was not exempt from the payment of overtime based on Defendants failure to assign or pay any wages to Plaintiff under the Agreement.

   d. Defendants' Executive Employment Agreement plainly violates ORS 653.295 concerning non-competition language and the legal requirements that an employer must meet in order to obtain an enforceable non-competition agreement with an employee.

    e. Defendants' attorneys advised Defendants to take a credit for amounts paid to Plaintiff in April 2020 against unpaid minimum wages earned but unpaid from November 18, 2019, to March 31, 2020, which is a violation of state and federal wage and hour law where minimum wage is calculated on a weekly basis, which exposed Defendants to penalties for willful failure to pay wages due at termination.

53. In all these ways, Defendants' Attorneys harmed Defendants with negligent legal advice, and Defendants likely have a claim for damages against Defendants' Attorneys for legal malpractice.

54. Defendant VR Training Solutions, Inc.'s actions and failure to pay Plaintiff the wages, minimum wages, and overtime wages he is owed, exposes individual Defendants potential personal liability under the FLSA.

55. Individual Defendants, who are directors and board members of Defendant VR Training Solutions, Inc., owe a fiduciary duty to Plaintiff as a shareholder, which would include an obligation to hire appropriate legal counsel or pursue legal malpractice claims against counsel that have given rise to exposure or damages against Defendants.

56. Defendants willfully failed to pay Plaintiff state and federal minimum wages.

57. Defendants willfully failed to pay Plaintiff his final wages due at the time of termination.

58. Defendants willfully failed to pay Plaintiff overtime wages during his employment.

59. Plaintiff entitled to recover unpaid overtime wages, unpaid wages, liquidated damages equal to the amounts of unpaid overtime wages, state penalties, and costs, disbursements, and attorney fees.  ORS 652.140; ORS 652.150; ORS 653.055; ORS 652.200; 29 USC §§ 207, 216.

60. Plaintiff seeks simple interest at a rate of 9% on all amounts due and owing from the date of Plaintiff's termination and from the date of judgment.  ORS 82.010.

### III.    PLAINTIFF'S CLAIMS FOR RELIEF AND REQUESTED REMEDIES

#### *PLAINTIFF'S WAGE CLAIMS*

61. Plaintiff was not exempt from the payment of overtime.

62. Defendants did not pay Plaintiff state or federal minimum wages.

63. Plaintiff is entitled to a constructive hourly rate, pursuant to the annual salary Defendants agreed to pay Plaintiff for the entire year, even though Defendants failed to pay Plaintiff any wages for more than the first four months of employment.

64. Defendants did not pay Plaintiff overtime for all hours worked in excess of 40 hours per week.

65. Defendants did not count all time Plaintiff worked as compensable time, resulting in a failure to pay all wages and a failure to pay overtime wages.

66. Plaintiff worked more than 40 hours per week for Defendants during his employment.

67. Defendants did not pay Plaintiff overtime at a rate of 1.5 times his regular rate for hours worked in excess of 40 hours per week, which they are required to do.  ORS 653; 29 USC § 207.

68. Plaintiff is entitled to recover liquidated damages equal to the amount of unpaid overtime hours and unpaid minimum wages.  29 USC § 216.

69. Defendants willfully failed to pay Plaintiff overtime wages.  ORS 653.055.  Plaintiff is entitled to recover a state law penalty.  ORS 652.150

70. Defendants willfully failed to pay Plaintiff minimum wages.  ORS 653.055.  Plaintiff is entitled to recover a state law penalty for this separate violation.  ORS 652.150.

71. Defendants willfully failed to pay Plaintiff all wages due at termination.  ORS 652.140. Plaintiff is entitled to recover a state law penalty for failure to pay regular wages due at termination, even though Defendants acknowledge owing Plaintiff additional wages.  ORS 652.150.

72. Plaintiff is entitled to have Defendants pay Defendants' portion of all FICA payroll taxes which result from Defendants debt, payment and obligation to Plaintiff for unpaid wages, overtime wages, or minimum wages.

73. Plaintiff is costs, disbursements, and attorney fees.  ORS 653.055; ORS 652.200; 29 USC §§ 206, 207, 216.

*PLAINTIFF'S BREACH OF CONTRACT CLAIMS*

74. Defendants promised to pay Plaintiff $6,000.00 per month for all work performed from February 18, 2020, to March 31, 2020.

75. Defendants materially breached the Employment agreement by failing to pay Plaintiff amounts owed.

*PLAINTIFF'S CLAIM FOR BREACH OF GOOD FAITH AND FAIR DEALING*

76. Plaintiff and Defendants entered into an agreement in which Plaintiff would presumably be paid at least $76,000.00 and accrual of equity in Defendants business.

77. Defendants owed Plaintiff a duty of good-faith and fair dealing in executing the terms of this agreement, including the financial and equitable benefit Plaintiff would receive under the contract in exchange for performing his duties for a full year.

78. Defendants breached the duty of good faith and fair dealing in terminating Plaintiff prematurely, before Plaintiff could receive the full benefit of the agreement he reached between Defendants and Plaintiff. When the parties reached this agreement verbally, based on information and belief, there was no discussion of any at-will status; rather it was presumed and assumed that Plaintiff would remain employed for the full year, up to the full three years, which would permit Plaintiff to earn his salary and full equity benefits.

79. At minimum, Plaintiff should be permitted to recover up to a full two-years' salary going forward in the amount of $240,000.00.

*PLAINTIFF'S EQUITABLE REQUEST FOR CONSTRUCTIVE TRUST*

80. Defendants owe Plaintiff a fiduciary duty as a shareholder of Defendants corporation.

81. Defendants also hold property, including intangible property, of which the proceeds and moneys are owed to Plaintiff, and of which Plaintiff may suffer irreparable harm if funds or property are not delivered and held in trust for Plaintiff's benefit.

82. Defendants are believed to have an intangible asset of a legal malpractice claim against the attorney, attorneys, and law firm that drafted and advised Defendants on the Executive Employment Agreement between Defendants and Plaintiff.

83. These legal malpractice claims arise specifically out of advice that Defendants received in relation to hiring Plaintiff, attempting to obtain an enforceable non-compete agreement over Plaintiff, and advising Defendants to pay Plaintiff via an unlawful payment scheme under state and federal law.

84. The proceeds and harms Defendants will suffer as a result of the legal malpractice claim are, in essence, the damages Plaintiff seeks in this lawsuit for unpaid wages, minimum wages, overtime, liquidated damages, state penalties, and costs, attorney fees, and interest.

85. Plaintiff seeks equitable and injunctive relief and requests the court to impose a constructive trust on Defendants money, which is owed to Plaintiff as well as the intangible asset of the legal malpractice claim, as well as the proceeds of any such legal malpractice claim, as well as Defendants cooperation and information pertaining to the information of the legal malpractice claim.

86. Plaintiff seeks equitable and injunctive relief and requests the court to impose a constructive trust on any attorney fees that Defendants pay to any defense firm that is subject to disgorgement because of the legal malpractice Defendants have against that defense firm.

87. Plaintiff seeks the proceeds of the constructive trust be held in trust for Plaintiff and paid to Plaintiff in the amounts owed as alleged herein, including costs and attorney fees incurred in pursuing this litigation.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

DATED this November 2, 2020

          /s/Quinn E. Kuranz
          Quinn E. Kuranz, OSB #114375
          Of Attorney for Plaintiff